UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DARRIN SHER,

                              Plaintiff,

    -against-

CITY OF NEW YORK, JOHN HANNAGAN, ERIK
HANSEN, and JOHN OR JANE DOE 1-10,

                            Defendants.

------------------------------------------------------------------------x

**AMENDED COMPLAINT**

1:21-cv-01339 (DLC)

**Demand for Trial by Jury**

Plaintiff, DARRIN SHER, by and through the undersigned attorneys, Sim & DePaola, LLP, for his complaint against the Defendants, City of New York, individually and in their official capacities as police officers, John Hannagan, Erik Hansen, and John or Jane Doe 1-10, alleges and states as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 for the violation of his civil rights protected by the Fourth, Sixth and Fourteenth Amendments, in addition to violations of the Laws and Constitution of the State of New York.

2.    These claims arise from a April 27, 2018 incident in which Defendants, acting under color of state law, unlawfully stopped, arrested and detained Plaintiff without a valid warrant, reasonable suspicion or probable cause to do so. Plaintiff was subsequently charged with Criminal Possession of a Controlled Substance, Tampering with Evidence, and other related criminal acts. He was thereafter maliciously prosecuted, until the respective charges were each dismissed and sealed on August 1, 2018.

3.      The above referenced acts caused Plaintiff to be deprived of his liberty, denied his rights to due process and equal protection of the laws, as well as to sustain various emotional and physical injuries.

4.      Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, an award of costs and attorneys' fees, and such other and further relief as the Court may deem just and proper.

## JURISDICTION

5.      This action arises under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 and pursuant to the Laws and Constitution of the State of New York.

6.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

7.      Venue is laid within the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

8.      Plaintiff, DARRIN SHER ("Plaintiff"), is an adult male who resides in Bronx, New York.

9.      At all times relevant herein, Defendant, City of New York ("City"), is a municipal corporation duly organized and existing under the laws of the State of New York.

10.     At all times relevant herein, the New York City Police Department ("NYPD") is a wholly owned subsidiary that is further wholly operated, managed, maintained and controlled by Defendant City.

11.     At all times relevant herein, Defendant City, acting through its NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives, and supervisory officers as well as the individually named Defendants herein.

12.     At all times relevant herein, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

13.     At all relevant times herein, Defendant JOHN HANNAGAN, ("HANNAGAN") was a police officer, detective, supervisor, policy maker and/or official employed by the NYPD under Shield No. 1458. Defendant HANNAGAN is currently assigned to the Midtown South Precinct.

14.     At all relevant times herein, Defendant ERIK HANSEN, ("HANSEN") was a police officer, detective, supervisor, policy maker and/or official employed by the NYPD under Shield No. 01874. Defendant, at all relevant times herein, was assigned to the Midtown South Precinct.

15.     At all relevant times, Defendants, John or Jane Doe 1-10, were police officers, detectives, supervisors, policy makers and/or officials employed by the NYPD.  At this time, Plaintiff does not know the true names or tax registry numbers of John or Jane Doe 1-10, but believes such knowledge is within possession of the Defendants. The names John or Jane Doe 1-10 are fictitious and meant as placeholders for the NYPD officers who (1) slammed Plaintiff against a wall, (2) stomped on Plaintiff's foot, (3) punched Plaintiff, (6) put Plaintiff into a chokehold

from behind with their forearm across Plaintiff's throat, (7) falsely arrested Plaintiff, (8) made false statements to the DA's office in connection with Plaintiff's prosecution, and (9) aided, abetted, acted in concert or conspired with the other John of Jane Doe Officers to do the same.

16.     At all relevant times herein, Defendants, including John or Jane Doe 1-10, were acting as agents, servants and employees of the City of New York, the NYPD.  Defendants, John or Jane Doe 1-10, are being sued in their individual and official capacities.

17.     At all relevant times herein, Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL CHARGES

18.     On or about April 27, 2018, at approximately 10:30 p.m., Plaintiff was lawfully present in the vicinity of the intersection West 40th Street and Broadway, in New York, New York.

19.     At all times herein mentioned, Plaintiff was in obeyance of all laws.

20.     At the above stated location, Plaintiff was illegally approached, stopped, assaulted, battered, searched, and seized by Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, as he had committed no crime or violation of the law.

21.     Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, slammed Plaintiff's face and head into a wall causing it to bleed. They then violently grabbed and punched Plaintiff's face and body despite the fact that Plaintiff was not resisting or fighting them in any way and further presented no physical threat to them or any third parties. While one or more of the aforesaid Defendant officers were punching Plaintiff, another held Plaintiff from behind with his forearm across Plaintiff's throat, choking him and applying pressure to his windpipe, cervical spine, and/ or carotid arteries.

22.     Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10 stomped on Plaintiff's right foot, breaking it, and further causing tendon, ligament and/ or other peripheral soft tissue damage. Plaintiff was then forced to walk on his broken foot to a police car while he was mocked and ridiculed by the NYPD officers who violently and brutally assaulted him. At all times, Plaintiff was immediately aware of and did not consent to any of the aforementioned physical contact between Defendants and Plaintiff.

23.     Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, applied handcuffs to Plaintiff's person in an excessively forceful and tight fashion, which caused him to suffer substantial pain and discomfort.

24.     Upon arrival at the precinct, Defendants, including HANNAGAN, and HANSEN, conducted or authorized an illegal strip search and cavity inspection of Plaintiff's person, as there was no reasonable suspicion, probable cause, nor any indication that Plaintiff secreted any contraband into a body cavity or orifice.

25.     Defendant, including HANNAGAN, HANSEN, and John or Jane Doe 1-10 caused a Criminal Complaint to be filed with the District Attorney's office despite their complete knowledge that the information forming the bases for the criminal charges therein was completely fabricated, incomplete and misleading.

26.     Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, knowingly and intentionally gave false, misleading, or incomplete information to the District Attorney's Office, namely that they observed plaintiff involved in a drug sale and that they observed Plaintiff try and get rid of evidence of such.

27.     Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, were fully aware that plaintiff had not committed any crime or violation of the law, including Criminal

Possession of a Controlled Substance or Tampering with Evidence, but chose to state so anyway to justify their wrongful actions toward Plaintiff.

28.     Plaintiff, therefore, asserts that due to the clear absence of any viable probable cause to warrant his detention or prosecution, at any point, he was unlawfully detained, denied his right to fair trial and maliciously prosecuted from the moment he was stopped and viciously assaulted by defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, until the favorable termination of the criminal charges in his favor.

29.     Plaintiff was deprived of his liberty and freedom of movement after his criminal court arraignment, because he was compelled to personally appear in court after his arraignment to contest the false charges levied against him. Plaintiff was aware of his illegal and unjustified confinement and did not consent to such.

30.     At all times relevant hereto, the Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10 were involved in the decision to arrest Plaintiff without probable cause, or failed to intervene when they observed others arresting Plaintiff without probable cause.

31.     Plaintiff asserts that the aforementioned unlawful acts committed by Defendants are representative of a pervasive policy, custom or pattern and practice within the City of New York and the NYPD.

32.     Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, unlawfully stopped, questioned, searched, seized, arrested, and maliciously prosecuted Plaintiff, due solely to Defendants' perception or consideration of Plaintiff's race, religion, or other improper characteristics.

33.     Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, subjected Plaintiff to disparate treatment compared to other individuals similarly situated, because

Defendants did not stop any white individuals, who were present and similarly situated to Plaintiff.

34.     Plaintiff asserts that the Defendants, including HANNAGAN, HANSEN, and John or Jane Doe 1-10, who violated Plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact their police officers.

35.     The individually named Defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

36.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Attached hereto, as Exhibit A, and incorporated by reference herein, are various articles and reports detailing the magnitude and overwhelming prevalence of incidents,

in which NYPD officers were caught lying, including instances that resulted in the arrest and

imprisonment of innocent people. Also detailed, is the NYPD's obstinate refusal to effectuate

corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and

perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these

officers, including those who were inculpated via some incontrovertible form of evidence.

37.     On March 18, 2018, *The New York Times* published an explosive article, entitled

"Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr.

Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting

the fact that the substantiation of a claim against an officer will invariably rely on the presence of

incontrovertible proof against the officer. Due to the rarity availability of this type of evidence,

an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is

further handicapped by a terribly designed system that requires evidence of a virtually

indisputable nature to substantiate any claim against an officer. The article also details the

NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that

this reluctance is a significant cause of the lying pandemic within the NYPD. The article

references various officers and detectives who were the subject of credible accusations relating

to the officers' intentionally false statements, with some allegations coming from federal and

state judges.

38.     On September 12, 2019, *The New York Times* published another article by Joseph

Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars."

Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of

marijuana to excuse a search that conspicuously do not result in the recovery of any marijuana. It

should not require an article in *The New York Times* to call attention to such patently

disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

39.     On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

40.     Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

41.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them, especially those involving unlawful discrimination or bias. On June 26, 2019, *The New York Times* published an article, entitled

"2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

42.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in Plaintiff's arrest without probable cause.

43.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

44.     Defendants' actions, pursuant to Plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of Plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with Defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

45.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of Defendants, the NYPD and City of New York.

46.     Upon information and belief, the personnel files, records and disciplinary histories of the officer Defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer Defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named Defendants committing similar violations in the future was extremely high.

47.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of Defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including HANNAGAN, HANSEN, and John or Jane Doe 1-10.

48.     Upon information and belief, the NYPD and City of New York and have failed, or outright refused, to correct the individually named Defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

49.     The aforementioned acts of Defendants, including the City, HANNAGAN, HANSEN, and John or Jane Doe 1-10, directly or proximately resulted in the deprivation or violation of Plaintiff's civil rights, as guaranteed and protected by the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of New York.

50.     As direct or proximate results of said acts, Plaintiff was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and anxiety.

**<u>FIRST CAUSE OF ACTION</u>**
Unlawful Search and Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

51.     The above paragraphs are here incorporated by reference as though fully set forth herein.

52.     Defendants subjected Plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

53.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

54.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

55.     The unreasonable searches and seizures to Plaintiff's person and property were not otherwise privileged.

56.     Accordingly, Defendants violated Plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution.

57.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

58.    The above paragraphs are here incorporated by reference as though fully set forth herein.

59.    The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

60.    The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

61.    At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

62.    Defendants acted intentionally to confine Plaintiff without any legal justification or probable cause to do so.

63.    Plaintiff was aware of the aforesaid confinement.

64.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

65.    The above paragraphs are here incorporated by reference as though fully set forth herein.

66.    The Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent and without justification.

67.    Defendants intentionally engaged in and subjected Plaintiff to immediate harmful or offensive touching and battered him without his consent.

68.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

69.     The above paragraphs are here incorporated by reference as though fully set forth herein.

70.     Defendants initiated the prosecution against Plaintiff.

71.     Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

72.     Defendants acted with malice, which, in the absence of probable cause, may be inferred.

73.     The prosecution was terminated in Plaintiff's favor when all criminal charges were unconditionally dismissed and sealed.

74.     Accordingly, Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights.

75.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

76.     The above paragraphs are here incorporated by reference as though fully set forth herein.

77.     Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

78.     Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

79.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)      In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)      Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)      Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)      Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

**e)**      Granting such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: March 21, 2022

Respectfully submitted,

 _S/ Sameer Nath_____
Sameer Nath, Esq.
Bar Number: 5403662
Sim & DePaola, LLP
*Attorneys for Mr. Sher*
4240 Bell Blvd - Ste 405
Bayside, NY 11361
T: (718) 281-0400
F: (718) 631-2700
snath@simdepaola.com